**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| YAREIDY R. GARCIA-RODRIGUEZ d/b/a GARCIA CANDY & TOBACCO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA and THOMAS VILSACK, SECRETARY, UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>Defendants. | Civil Action No. 16-7487 (ES) (JAD)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

## I. Introduction

Pending before the Court is Defendants United States of America and Thomas Vilsack's unopposed motion for summary judgment. (D.E. No. 6 ("Motion")).[1] The Court has subject-matter jurisdiction over the claims against Defendant United States of America, but not Defendant Thomas Vilsack. *See* 7 U.S.C. § 2023(a)(13); *Calderon v. U.S. Dep't. of Agric.*, 756 F. Supp. 181, 184 (D.N.J. 1990) (holding that 7 U.S.C. § 2023 waives sovereign immunity only as to the United States itself and not as to any other governmental party).[2] The Court declined to hold oral argument under Federal Rule of Civil Procedure 78(b). For the following reasons, Defendants' Motion is GRANTED.

---

[1] In a letter dated March 6, 2017, counsel for Defendant United States of America represented that he "corresponded with Plaintiff's counsel and confirmed that they will not file opposition papers." (D.E. No. 7).

[2] Accordingly, Plaintiff's claims against Defendant Thomas Vilsack are dismissed *with prejudice*.

### A. Factual Background and Procedural History[3]

Yareidy R. Garcia-Rodriguez is the owner of Garcia Candy & Tobacco ("Plaintiff"), a small business located in Irvington, New Jersey. (SMF ¶ 1). Plaintiff opened for business in or about September 2013. (*Id.* ¶ 3). In or about December 2013, Plaintiff submitted an application to the Food and Nutrition Service of the United States Department of Agriculture ("FNS") seeking authorization to participate in the Supplemental Nutrition Assistance Program, also known as the food stamp program ("SNAP"). (*Id.* ¶ 4). In its application, Plaintiff declared itself as a retail store and estimated to have $500,000 worth of retail sales annually. (*Id.* ¶ 5). Plaintiff also stated that it did not sell products wholesale to other businesses. (*Id.*). FNS approved Plaintiff's application on December 19, 2013, authorizing Plaintiff to participate in SNAP as a "retail food store." (*Id.* ¶ 6).

After detecting suspicious transactions and food stamp redemptions from Plaintiff in 2014, FNS opened an investigation of Plaintiff's business operations. (*Id.* ¶ 7). On March 11, 2016, FNS conducted an on-site inspection of Plaintiff's business. (*Id.* ¶ 8). During the inspection, an FNS contractor observed that Plaintiff did not provide carts or baskets for its customers, nor did it have an optical scanner at the checkout area (which the FNS contractor described as "very very small with just a small shelf and window"). (*Id.* ¶ 9). A review of Plaintiff's sale transactions showed that a substantial portion of transactions were "high dollar" and that there were "repeats on same dollar values." (*Id.* ¶ 10). Photographs of Plaintiff's business show bulk packages of food, drinks, and other products. (*Id.* ¶ 11). Photographs also show awnings on the exterior of

---

[3] The Court derives the factual background from Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1. (D.E. Nos. 6-7 ("SMF")). *See* L. Civ. R. 56.1 (providing that "any material fact not disputed shall be deemed undisputed for the purposes of the summary judgment"); *Ruth v. Selective Ins. Co. of Am.*, No. 15-2616, 2017 WL 592146, at *3 (D.N.J. Feb. 14, 2017) ("[A] movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts . . . receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion.").

Plaintiff's business with the word "WHOLESALE" in large capital letters. (*Id.* ¶ 12). Finally, during the on-site inspection, Mr. Garcia-Rodriguez told the FNS contractor that customers could purchase products in the store at retail or wholesale. (*Id.* ¶ 13). Mr. Garcia-Rodriguez also stated that Plaintiff sells products directly to other grocery stores. (*Id.* ¶ 14).

After the on-site inspection, FNS sent two letters to Plaintiff requesting additional documents and information and asking Plaintiff to submit an application for reauthorization. (*Id.* ¶ 15). Plaintiff submitted the application and provided FNS with the requested documents. (*Id.* ¶ 16). Among the documents provided to FNS was a "Profit & Loss Statement," which shows that all of Plaintiff's income was attributable to either "Wholesale Sales" or "Food Stamps Wholesales." (*Id.* ¶ 17). Plaintiff also provided (i) a completed 2015 IRS Form 1040 in which Plaintiff described its "principal business or profession" as "wholesale tobacco," and (ii) a "Cigarette Wholesales Dealers License" issued by the State of New Jersey. (*Id.* ¶¶ 18-19).

Plaintiff does not maintain separate accounting systems for retail and wholesale transactions. (*Id.* ¶ 20). And Plaintiff admitted in its application for reauthorization that it is a wholesaler without any retail sales:

> GARCIA CANDY & TOBACCO LLC IS A WHOLESALE DISTRIBUTOR. TOTAL RECEIPTS ARE FROM WHOLESALE SALES INCLUDING THE FOOD STAMPS SALES. THIS STORE DOES NOT SALE [SIC] ANY PRODUCTS AT RETAIL.

(*Id.* ¶ 21).

Based on the foregoing evidence, FNS concluded that Plaintiff was not operating as a retail food store or as a co-located wholesale food concern, as those terms are defined in the SNAP regulations. (*Id.* ¶ 22). By letter dated August 3, 2016, FNS explained to Plaintiff that, in ten days, Plaintiff would no longer be authorized to participate in SNAP, and that Plaintiff would be barred

from applying for reauthorization for at least six months.  (*Id.* ¶¶ 23-24).  FNS provided Plaintiff with evidence in support of its decision.  (*Id.* ¶ 23).

Plaintiff timely requested an administrative review of FNS's determination, as well as an "opportunity to submit further information and evidence."  (*Id.* ¶ 25).  Upon receipt of Plaintiff's administrative challenge, FNS held Plaintiff's deauthorization in abeyance and assigned an Administrative Review Officer ("ARO") to review the agency's decision.  (*Id.* ¶¶ 26-27).  The ARO wrote to Plaintiff and explained that Plaintiff would have three weeks to submit evidence in support of its challenge.  (*Id.* ¶ 28).  Plaintiff failed to submit any information or documents to the ARO in connection with its administrative challenge.  (*Id.*).

On September 19, 2016, the ARO issued the Final Agency Decision (the "Decision").  (*Id.* ¶ 29).  The Decision concludes that Plaintiff violated SNAP and that it was proper to withdraw Plaintiff's authorization to participate in the program.  (*Id.* ¶ 30).  FNS is holding the Decision in abeyance until this Court reaches a final decision.  (*Id.* ¶ 31).

On September 21, 2016, Plaintiff brought this action to reverse its temporary disqualification from SNAP.  (D.E. No. 1 ("Compl.")).  Plaintiff claims that it "is not 100% wholesale and is in fact less than 50% and the USDA failed to consider additional evidence or conduct an additional on site visit."  (*Id.* ¶ 6).  On February 6, 2017, Defendants moved for summary judgment.  (D.E. No. 6-1 ("Def. Br.")).  As noted above, Plaintiff did not oppose Defendants' Motion.  The Motion is now ripe for adjudication.

## II. Standard of Review

### A. Unopposed Summary-Judgment Motions

Where, as here, a summary-judgment motion is unopposed, Federal Rule of Civil Procedure 56(e)(3) still requires the Court to satisfy itself that summary judgment is proper.  *See*

*Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Federal Rule of Civil Procedure 56(a) provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." "A 'genuine' dispute of 'material' fact exists where a reasonable jury's review of the evidence could result in 'a verdict for the non-moving party' or where such fact might otherwise affect the disposition of the litigation." *Ruth*, 2017 WL 592146, at *2 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Where a party submits a properly filed and supported summary-judgment motion that goes unopposed, "it would be an exceptional case where the court concludes that summary judgment should nonetheless be denied or withheld, although the Court has discretion to do so if unsatisfied that the law and facts point to judgment as a matter of law." *Id.* at *3.

### B. Judicial Review Under SNAP

Courts apply a two-step analysis when reviewing challenges to an administrative action under SNAP. *First*, the court undertakes a de novo review of the record to determine whether the plaintiff violated the Food Stamp Act. 7 U.S.C. § 2023(a)(15); 7 C.F.R. § 279.7(c); *see also Affum v. United States*, 566 F.3d 1150, 1160-61 (D.C. Cir. 2009) ("It seems clear under the statute that Congress intended district courts to conduct a trial de novo and engage in de novo review to determine whether a . . . violation [of the Food Stamp Act] occurred.").[4]

*Second*, if the court finds that violations did occur, it decides whether the penalty imposed by FNS was arbitrary or capricious. *Affum*, 566 F.3d at 1161. A penalty is arbitrary or capricious if it is "unwarranted in law or without justification in fact." *Willy's Grocery v. United States*, 656

---

[4] Although the Food Stamp Act provides that a plaintiff is entitled to a "trial de novo," 7 U.S.C. § 2023(a)(15), courts routinely hold that these cases may be properly resolved on summary judgment when there are no genuine disputes as to any material facts. *Freedman v. U.S. Dep't. of Agric.*, 926 F.2d 252, 261 (3d Cir. 1991).

F.2d 24, 26 (2d Cir. 1981). The plaintiff bears the burden of proof throughout this two-step process. *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975); *Han v. Food & Nutrition Serv. of U.S. Dep't. of Agric.*, 580 F. Supp. 1564, 1567 (D.N.J. 1984). The plaintiff must establish the invalidity of the agency action by a preponderance of the evidence. *Modica*, 518 F.2d at 376; *White Horse No. 2 v. United States*, No. 11-1538, 2012 WL 1533468, at *3 (D.N.J. Apr. 30, 2012).

### III. Discussion

#### A. Overview of SNAP Statutes and Regulations

SNAP is designed "to safeguard the health and well-being of the Nation's population by raising the levels of nutrition among low-income households." 7 U.S.C. § 2011. Generally, the program supplements the funds families have to spend on food with food stamp allotments, which may be used for purchasing certain items at authorized businesses. *Id.* § 2013(a). Participation in the program—whether by the households that are provided with food stamps or the businesses that are authorized to accept them—is governed by a statutory and regulatory regime designed to achieve the law's objectives, while also rooting out fraud and abuse. *See generally id.* § 2011.

Most businesses that are authorized to participate in SNAP are traditional "retail food stores," which are defined as establishments "that sell[] food for home preparation and consumption" and sell a variety of certain categories of food or at least "50 percent of the total sales . . . in staple foods." *Id.* § 2012(o); *see also* 7 C.F.R. § 271.2 (defining "retail food store"); § 278.1(b)(1) (describing program requirements for retail food stores).

In limited circumstances, wholesalers may also be authorized to accept food stamps. *See* 7 U.S.C. § 2018(a-b) (authorizing the Secretary of the United States Department of Agriculture to promulgate regulations governing retail food stores and wholesale food concerns); 7 C.F.R. § 271.2 (defining a "wholesale food concern" as "an establishment which sells eligible food to retail

food stores or to meal services for resale to households"). Wholesalers must satisfy all the requirements applicable to retail food stores. 7 C.F.R. § 278.1(c). In addition, FNS must determine that the wholesale "is required as a redemption outlet" for certain specified customers, namely, a drug or alcohol treatment program; a group-living arrangement; a shelter for battered women and children; for certain authorized nonprofit cooperative food-purchasing ventures or homeless meal providers; or for "specified authorized retail food stores which are without access to an insured financial institution which will redeem their coupons." *Id.*

A third category of businesses—stores that contain both retail and wholesale components, or "co-located wholesale food concerns"—can participate in SNAP if they meet certain requirements. *See* 7 U.S.C. § 2018(b)(1). If the co-located wholesale food concern has 50% or less of its total sales attributable to retail food sales, it cannot participate in SNAP unless the business meets the requirements applicable to retail food stores and fits into either of two exceptions. *See* 7 C.F.R. 278.1(b)(1)(vi).

To qualify under the first exception, the co-located wholesale food concern must show that it "is a legitimate retail food outlet." 7 C.F.R. § 278.1(b)(1)(vi)(A). FNS considers a range of factors to determine if a business meets this exception, including "[t]he firm's market structure" and "[t]he way the firm holds itself out to the public." *Id.* 278.1(b)(1)(vi)(A)(1-2). In addition, the business must show "total annual retail food sales of at least $250,000." *Id.* § 278.1(b)(1)(vi)(B).

To qualify under the second exception, the co-located wholesale food concern must show that it "is a legitimate retail outlet but . . . [has less than $250,000 of annual retail food sales]" and that not authorizing the business "would cause hardship to [food stamp] households." *Id.* § 278.1(b)(1)(vi)(C); *see also* 7 U.S.C. § 2018(b)(1). A business can establish a "hardship" by

showing that (i) "[p]rogram recipients would have difficulty finding authorized firms to accept their coupons for eligible food"; (ii) "[s]pecial ethnic foods would not otherwise be available to recipients"; or (iii) "[r]ecipients would be deprived of an opportunity to take advantage of unusually low prices offered by the firm if no other authorized firm in the area offers the same types of food items at comparable prices." 7 C.F.R. § 278.1(b)(1)(vi)(C).

Once a business is authorized to participate in SNAP, FNS will periodically review the business's continued eligibility. *Id.* § 278.1(j). If FNS determines that a business is ineligible to participate in SNAP, FNS is required to deauthorize that business. *Id.* § 278.1(b)(1)(iv). To challenge a deauthorization, an aggrieved business must first exhaust its administrative remedies before an ARO. 7 U.S.C. § 2023(a)(3); 7 C.F.R. § 279.1. Generally, the business's deauthorization will be held in abeyance until the ARO issues a final decision. 7 C.F.R. § 279.4(a). After the ARO issues its decision, the aggrieved business can proceed with an action in state or federal court. 7 U.S.C. § 2023(a)(13); 7 C.F.R. § 279.7(a).

### B. Plaintiff Violated the Food Stamp Act

The Court finds that Plaintiff violated the Food Stamp Act and its corresponding regulations. Quite frankly, this is not a difficult call. As Defendants point out, Plaintiff admitted in its reauthorization application that it "is a wholesale distributor" with all of its sales attributable to "wholesale sales" and that it "does not sell any products at retail." (Def. Br. at 13; SMF ¶¶ 16-21). Plaintiff's IRS Form 1040 indicates that its "principal business or profession" is "wholesale tobacco," and Plaintiff's Profit & Loss Statement categorizes all of Plaintiff's income as attributable to wholesale transactions. (Def. Br. at 13; SMF ¶¶ 17-18).

During the FNS contractor's on-site inspection, Mr. Garcia-Rodriguez admitted that the business sold products directly to grocery stores. (Def. Br. at 13; SMF ¶ 14). The FNS contractor

also observed that Plaintiff did not provide customers with carts, baskets, or an optical scanner near the checkout area. (Def. Br. at 13; SMF ¶ 9). Photographs of the business reveal awnings on the exterior of the store featuring the word "WHOLESALE," as well as bulk-packaged food, drinks, and other products. (Def. Br. at 13; SMF ¶¶ 11-12). And a review of Plaintiff's sale transactions showed that a substantial portion of the transactions were "high dollar" and that there were "repeats on same values." (Def. Br. at 13; SMF ¶ 10). Based on the foregoing evidence, the Court concludes that Plaintiff was not operating as "retail food store" for purposes of SNAP. Consequently, Plaintiff must show that it complied with the requirements applicable to "wholesale food concerns" or "co-located wholesale food concerns."

As noted above, FNS may authorize a wholesale food concern to participate in SNAP only if it determines that the wholesaler "is required as a redemption outlet" for certain specified customers (e.g., a drug and alcohol treatment program or a shelter for battered women and children). 7 C.F.R. § 278.1(c); 7 U.S.C. § 2018(b)(1). Plaintiff has not claimed—and FNS has not determined—that Plaintiff qualifies under one these exceptions. Thus, Plaintiff cannot be considered a wholesale food concern under SNAP. Similarly, Plaintiff cannot be considered a co-located wholesale food concern because it is not "a legitimate retail food outlet" for the reasons discussed above. 7 C.F.R. § 278.1(b)(1)(vi)(A). Accordingly, "Plaintiff has not carried its burden of establishing by a preponderance of the evidence that [the FNS's] determination was factually incorrect." *White Horse No. 2*, 2012 WL 1533468, at *3. The Court will therefore uphold FNS's determination.

### C. FNS's Withdrawal of Plaintiff's Authorization to Participate in SNAP Was Not Arbitrary or Capricious

FNS withdrew Plaintiff's authorization to participate in SNAP and imposed a six-month waiting period before Plaintiff can apply for reauthorization. (SMF ¶¶ 23-24). As Defendants

observe, Plaintiff cannot show that FNS abused its discretion "because the penalty imposed was not only within FNS's discretion, but required under the governing regulations." (Def. Br. at 16). For instance, once FNS determined that Plaintiff did not comply with the regulations, it was compelled to withdraw Plaintiff's authorization to participate in SNAP. 7 C.F.R. § 278.1(*l*)(1)(ii) ("FNS shall withdraw the authorization of any firm authorized to participate in the program" if, among other things, the business fails to qualify as a retail food concern, a co-located food concern, or a wholesale food concern.); *id.* § 278.1(b)(1)(iv) ("Firms that do not meet the eligibility requirements in this section or that do not effectuate the purpose of the Food Stamp Program shall not be eligible for program participation.").

The regulations also required FNS to impose a six-month waiting period before Plaintiff can apply for reauthorization. *Id.* § 278.1(*l*)(1)(iii) (providing that, for a co-located wholesale food concern that fails to meet the requirements of 278.1(b)(1)(vi), FNS "shall withdraw" that firm's authorization "for the time period specified in paragraph (k)(2) of this section"); *id.* § 278.1(k)(2) (providing a six-month waiting period before a firm can apply for reauthorization); *see also id.* § 278.6(a) (authorizing FNS to disqualify stores that do not comply with the Food Stamp Act or the corresponding regulations for a period of six months to five years for a first sanction and up to permanent disqualification for certain offenses). Accordingly, the Court finds that FNS's withdrawal of Plaintiff's authorization to participate in SNAP and imposition of a six-month waiting period before Plaintiff can apply for reauthorization is not arbitrary or capricious. *See Grocery Town Mkt., Inc. v. United States*, 848 F.2d 392, 394-97 (3d Cir. 1988); *Willy's Grocery*, 656 F.2d at 26-27; *White Horse No. 2*, 2012 WL 1533468, at *3.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Motion and dismisses Plaintiff's Complaint in its entirety. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
